UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

STATE FARM FIRE AND CASUALTY CO, :
*A/S/O DONALD BOLLENDORF*, and :
ALLSTATE INSURANCE CO., :
*A/S/O QUADRI ADESEUN*, :
       Plaintiffs, :
        :
    v. : No. 5:16-cv-2703
        :
PPL ELECTRIC UTILITIES, :
       Defendant / Third-Party Plaintiff, :
        :
    v. :
        :
QUADRI ADESEUN, :
       Third-Party Defendant. :
_____

**O P I N I O N**
PPL's Motion for Summary Judgment, ECF No. 46 – Denied in Part
Adeseun's Motion for Summary Judgment, ECF No. 49 – Denied

**Joseph F. Leeson, Jr.**                                                                 **June 9, 2017**
**United States District Judge**

**I. INTRODUCTION**

      Plaintiffs State Farm Fire and Casualty Company, as subrogee of Donald Bollendorf, and Allstate Insurance Company, as subrogee of Quadri Adeseun, filed a complaint against Defendant PPL Electric Utilities. The Complaint alleges that PPL was negligent and in breach of contract by failing to inspect and maintain the service entrance cable on Adeseun's property, which was installed by a privately-contracted electrician hired by Adeseun, the improper installation of which caused a fire that damaged Adeseun's home and spread to the neighboring property of Bollendorf. PPL filed a third-party complaint against Adeseun for contribution or indemnity, for his actions in either retaining the electrician that performed work improperly or in

1

not properly maintaining the service entrance cable after it was installed. PPL and Adeseun have filed motions for summary judgment. Since that time, Plaintiffs have agreed to voluntarily dismiss the breach of contract claim. PPL's request for summary judgment on the insurers' negligence claim is denied because whether PPL had constructive knowledge of a dangerous condition impacting Adeseun's electrical system, so as to impose a duty to take reasonable measures to avert harm, and what those reasonable measures, if any, should have been are questions for a jury. Adeseun's summary judgment motion, which is based on substantially similar arguments, is also denied.

## II. BACKGROUND

### A. Undisputed Facts[1]

Adeseun purchased a home located at 305 Pine Street in Steelton Borough, Pennsylvania, in July 2007. He subsequently decided to upgrade the electrical service and hired Jose Bautista to complete a portion of the project. Bautista agreed to install a new, 200-amp service entrance cable and run the cable from the PPL service drop line near the weatherhead to the meter base, and from the meter base to the panel box inside the home. A PPL service drop line is the electrical wire that runs from a PPL utility pole to the point of service at the home. At the point of service is a weatherhead, which is a small box where the PPL line is connected to the resident's service entrance cable. The resident leaves the end of his service entrance cable hanging out of the weatherhead for PPL to make the connection to the service drop line. The electric meter is the property of PPL, but the service entrance cable that runs from the meter to the weatherhead is the property of the resident.

---

[1] These facts are substantially taken directly from the parties' submissions, which contain citations to the record. *See* PPL's Stmt Facts, ECF No. 47; Pls.' Resp. PPL Stmt Facts, ECF No. 54; PPL's Reply, ECF No. 57.

2

When a Steelton Borough resident wishes to upgrade the electrical service at his home, he must first contact PPL to obtain a job number, then get a permit from the Borough that describes the scope of work to be performed. Once the permit is issued, the resident may begin work, subject to the Borough's inspection requirements. The Borough requires three inspections: rough inspection, service inspection, and final inspection.

Around September 2009,[2] Adeseun contacted PPL and obtained a job number for the project. In response, a PPL distribution service representative went to the property to measure the service drop and to identify the meter location. During a second visit to the property, the PPL representative and Adeseun discussed the location of the meter.[3]

An inspection hold was placed on PPL's work order, meaning that PPL would take no further action at the property until a local inspector contacted PPL to certify that Adeseun's work had been completed and PPL could return to connect the PPL service drop line to the newly-installed service entrance cable. But that never occurred, and PPL took no further action on the work order. Additionally, Adeseun never contacted the Borough to arrange a final inspection.

Instead, Bautista replaced the service entrance cable with the 200-amp line and connected the cable to PPL's service drop on his own, without PPL's authority and contrary to PPL's connection rules. Bautista was not certified to make this connection. Bautista used "bug connectors" to unite the upgraded service entrance cable and PPL's service drop line, which are not the type of connectors that PPL uses. Bautista also did not route the new service entrance cable through a conduit where the cable passed through a hole cut in part of the home's roof to

---

[2] *See* Berdanier Dep. 41:3-43:11, Ex. D, ECF No. 54-4.
[3] There is a factual dispute as to whether Adeseun knew it was possible to move the location of the meter to the back of his home.

3

reach the point of service on the roof.[4] On February 22, 2015, a fire erupted at the property which damaged Adeseun's home, as well as the neighboring property of Bollendorf. According to Plaintiffs' experts, the service entrance cable was compromised at the point where it passed through the roof, and that caused the fire.[5] One expert opined that had the cable been run through conduit at that location, the fire would not have occurred.[6]

It is noted that, for reasons apparently unrelated to the work order, PPL replaced the meter at Adeseun's property in November 2012, and had its contractor inspect the meter in October 2014.

B. **Summary Judgment Motions**

1. *PPL's Motion for Summary Judgment*

PPL filed a motion for summary judgment, asserting that Adeseun's actions were the sole cause of the fire, that PPL had no contractual or common-law duty to inspect the work performed by Adeseun's electrician on his property, and that the insurance companies' negligence claim is barred by the gist of the action doctrine because the case sounds in contract. PPL further contends that Allstate's claims are subject to dismissal because it is seeking to recover for payments it voluntarily made to Adeseun for acts that were not covered under Adeseun's policy. Finally, PPL argues that in discovery it appeared Plaintiffs were attempting to pursue another

---

[4] If the service entrance cable had been routed from a meter located in the back of the premises, it would not have had to pass through the roof.

[5] *See* Fricke Expert Report 7-9, ECF No. 54-2 (opining that the fire was caused by damage to the service entrance cable where it ran unprotected through the porch roof because several inches of recently-fallen snow caused the roof to pinch the cable, and that the failure to protect the service entrance cable by running it through conduit was in violation of PPL rules and the National Electric Safety Code); Schriver Expert Report 2, ECF Nos. 47-14 to -18 (opining that the fire originated at the porch roof where the service entrance cable ran downward along the wall from the weatherhead to the meter base, and that the rubber sheathing around the cable had been compromised by movement of the porch, most recently due to several inches of fallen snow).

[6] *See* Fricke Expert Report 7-9.

theory of liability, namely that PPL should have relocated the meter box, but that this theory was not pleaded in the Complaint.

In response, Plaintiffs agreed to dismiss the breach of contract claim and proceed solely on their claim of negligence. Allstate argues that it did not volunteer payment, but reimbursed its insured in good faith because the predominant cause of the loss was covered by the policy. Plaintiffs further contend that the complaint need only contain a short and plain statement and need not assert every individual legal theory. Adeseun filed a response stating that he incorporates and concurs with Plaintiffs' arguments.

### 2. *Adeseun's Motion for Summary Judgment*

In his motion for summary judgment, Adeseun argues that only PPL can be liable for breach of contract, not Adeseun, and that due to the gist of the action doctrine this case sounds in contract such that State Farm and Allstate cannot assert a negligence claim against PPL. Adeseun asserts that the negligence claim against PPL must be dismissed, along with the third-party complaint against him.

### III. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of the case under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 257.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once

such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The court must consider the evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## IV. ANALYSIS[7]

### A. PPL owed a duty of care to Adeseun and whether it breached that duty is a question for a jury.

A "negligence claim requires the plaintiff to show that: (1) the defendant had a duty to conform to a certain standard of conduct; (2) the defendant breached that duty; (3) such breach caused the injury in question; and (4) the plaintiff incurred actual loss or damage." *Krentz v. Consol. Rail Corp.*, 910 A.2d 20, 27 (Pa. 2006). Of these elements, the primary one is whether the defendant owed a duty to the plaintiff. *Althaus v. Cohen*, 756 A.2d 1166, 1168 (Pa. 2000).

Both parties initially[8] cited to *Alderwoods (Pa.), Inc. v. Duquesne Light Co.*, 106 A.3d 27 (Pa. 2014), to support their respective positions as to whether PPL had a common-law duty to

---

[7] In light of Plaintiffs' consent to voluntarily dismiss its breach of contract claim, Count II is dismissed. The only remaining count is for negligence.
[8] Despite PPL's reliance on *Alderwoods* in its brief in support of the Motion for Summary Judgment, PPL argued in its reply brief that *Alderwoods* is inapplicable to the facts of this case. *Compare* PPL's Brief 12-14, ECF No. 46-1, *with* PPL's Reply 4-9, ECF No. 57. This Court

Adeseun regarding any dangers that may have been presented by the installation of the new service entrance cable, which was his own property.[9]

In *Alderwoods*, several businesses, including the plaintiff's funeral home, lost power when a car crashed into a utility pole carrying electric lines connected to the funeral home. The electric company dispatched a crew to repair the damage. Shortly after power was restored to the affected properties, a fire erupted at the funeral home. The funeral home offered an expert opinion that when the utility pole fell, it caused a surge to the interior electrical system of the funeral home, resulting in visible damage to an interior electrical panel, and that the fire broke out when power was restored. The court accepted the funeral home's proffer that had the electric company inspected its own meter inside the funeral home before restoring power, it would have seen the damage to the electrical panel owned by the funeral home because they were in close proximity. The funeral home asserted a negligence claim, alleging that the electric company breached its duty of care when it restored electricity without first inspecting its own meter or contacting the funeral home.

---

concludes that although *Alderwoods* involved different a factual scenario, its holding is applicable to the instant action.

[9] Both parties also cite to *Althaus* and agree that an analysis of the factors set forth therein is not necessary, although they dispute whether application of these factors would impose a duty. *Althaus* held:
> The determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution.

*Althaus*, 756 A.2d at 1169. This Court agrees with the parties that it is unnecessary to conduct an analysis of the *Althaus* factors because the duty involved is "longstanding." *See Alderwoods*, 106 A.3d at 40-41 (concluding that analysis of the *Althaus* factors is unnecessary when applying a longstanding duty because "[c]ommon-law duties stated in general terms are framed in such fashion for the very reason that they have broad-scale application").

7

The court recognized that "under Pennsylvania law, maintenance and inspection responsibilities generally are divided at the service point, such that an electric service provider does not have a freestanding duty to inspect customer-owned electrical equipment and services on the premises' side." *Id.* at 38. Regardless, the court explained, electric service providers have "well-recognized duties of care, in the face of actual or constructive knowledge of a danger." *Id.* at 38 n.11. Specifically, they have a duty "to take reasonable measures to avert harm." *Id.* at 42 (affirming the Superior Court's recognition of "a duty, on the part of an electric service provider, to take reasonable measures to avert harm in a scenario in which the utility has actual or constructive knowledge of a dangerous condition impacting a customer's electrical system ").

Applying *Alderwoods*[10] to the facts of the instant action, this Court finds that although PPL did not have a duty to inspect or maintain the service entrance cable because it was the property of Adeseun, PPL did have a duty to take reasonable measures to avert harm if it had actual or constructive knowledge of a dangerous condition impacting Adeseun's electrical system. However, whether PPL had such knowledge and what measures would have been reasonable for PPL to take if it had such knowledge are matters for a jury. *See id.* at 42 (holding that "what actions [an electric utility] might have taken which would be considered reasonable under the circumstances . . . are precisely the sorts of considerations relegated to juries").

PPL's reliance on its General Tariff and the Rules for Electric Meter & Service Installments (REMSI) to assert that it had no duty of care to Adeseun with respect to the circumstances of this case is unavailing. It is true that Rule 5(A) of PPL's Tariff provides that the "customer assumes full responsibility for the energy and facilities at and beyond the point of delivery." But Rule 5(A) clarifies that the provisions regarding the customer's responsibility "do

---

[10] *See also Alderwoods (Pennsylvania), Inc. v. Duquesne Light Co.*, 52 A.3d 347 (Pa. Super. Ct. 2012).

not change the Company's duty and responsibility to provide safe and adequate service to the point of delivery." These tariffs "have the force and effect of law." *See PPL Elec. Utils. Corp. v. Pa. PUC*, 912 A.2d 386, 402 (Pa. Commw. Ct. Dec. 6, 2006) ("Public utility tariffs have the force and effect of law, and are binding on the customer as well as the utility."); *see also* 66 Pa. Cons. Stat. § 1501 (2016) ("Every public utility shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities, and shall make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and safety of its patrons, employees, and the public."). As previously explained, this Court does not conclude that PPL had a general duty to inspect or maintain Adeseun's equipment, or a general duty to protect Adeseun from a dangerous condition. Rather, this Court holds PPL had a duty "to take reasonable measures to avert harm [if it had] actual or constructive knowledge of a dangerous condition impacting [Adeseun's] electrical system." *See Alderwoods*, 106 A.3d at 42. Nothing in the Tariff or REMSI conflicts with this duty. *See Alderwoods*, 52 A.3d at 356-57 (concluding that the electric company's tariff, which stated that the utility must "use all reasonable care to provide safe and continuous delivery of electricity," was not inconsistent with the duty of care imposed). In fact, PPL's Tariff supports the imposition of a duty of care.

Whether PPL breached[11] its duty is a question for the jury, and there is sufficient evidence to overcome PPL's summary judgment request. Of note,[12] Plaintiffs have established

---

[11] Under Pennsylvania law, there is "only one standard of care in negligence actions involving dangerous instrumentalities--the standard of reasonable care under the circumstances." *Stewart v. Motts*, 654 A.2d 535, 539 (Pa. 1995) ("It is well established by our case law that the reasonable man must exercise care in proportion to the danger involved in his act."). "[E]lectricity is universally recognized to be a dangerous instrumentality, thus implicating a high degree of care on a utility's part." *Alderwoods*, 106 A.3d at 34 n.6 (citing *Alderwoods*, 52 A.3d at 356-57); *Yoffee v. Pennsylvania Power & Light Co.*, 123 A.2d 636, 646 (Pa. 1956) (explaining

that PPL was at Adeseun's property working on the meter two times after receiving a work order that Adeseun planned to replace the service entrance cable. PPL failed to follow-up with Adeseun regarding the work order and continued to provide electrical service throughout this time. Plaintiffs have also shown that when PPL was at the property, there was visible evidence that a new service entrance cable had been installed, that the cable did not run though conduit at the point it passed through the porch roof, that the meter had been opened,[13] and that the new service entrance cable had been connected to PPL's service drop line by a non-PPL electrician. Additionally, Plaintiffs have presented expert opinion that the lack of a conduit was a dangerous condition that eventually caused the fire at the property.

## B. The gist of this action is negligence.

PPL and Adeseun argue that the gist of this action is breach of contract and that the negligence claim should be dismissed. This argument is without merit.

In applying the gist of the action doctrine, the nature of the duty alleged to have been breached is "the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract." *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014). "If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract — i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract — then the claim is to be viewed as one for breach of contract." *Id.* As seen in the instant action, however, when "the facts establish that the

---

that the degree of care "must always be proportionate to the seriousness of the consequences which are reasonably to be anticipated as a result of the conduct in question").

[12] This Court offers no opinion as to whether the evidence, individually or as a whole, establishes that PPL had knowledge of a dangerous condition or failed to take reasonable measures to avert harm.

[13] There are factual disputes regarding whether the meter seal was broken and relating to the location and condition of the inspection sticker.

claim involves the defendant's violation of a broader social duty," it is a tort. *Id.* As previously discussed, PPL's duty is a longstanding duty imposed on all electric service providers. *See Alderwoods*, 106 A.3d at 40-41. The gist of this action is therefore the tort of negligence.

**C.  Because there is a factual dispute as to the cause of Adeseun's property damage, the exclusions in Allstate's policy do not preclude it from seeking subrogation and render meritless PPL's argument that Allstate is a volunteer.**

PPL cites to an exclusion in Allstate's policy stating: "We do not cover loss to the property . . . consisting of or caused by the following: . . . faulty, inadequate or defective . . . workmanship." PPL argues that when Allstate paid Adeseun for its property damage after the fire, it became a volunteer[14] and is therefore not entitled to seek subrogation. In response, Allstate points to the next section of the policy, which provides: "We do not cover loss to the property . . . when: 1) there are two or more causes of loss to the covered property; and 2) the predominant cause(s) of loss is (are) excluded" for faulty, inadequate or defective workmanship. Allstate contends that the predominant cause was the fire, not faulty workmanship, and that coverage was not excluded, making Allstate obligated to make payment.

Although this Court questions whether the fire was in fact the predominant cause of the loss, *see Ins. Co. v. Transp. Co.*, 79 U.S. 194, 199 (1871) (holding that "certainly that cause which set the other in motion and gave to it its efficiency for harm at the time of the disaster must rank as predominant"), this determination "is best left to the factfinder," *see Allstate Ins. Co. v. Breeden*, No. 85-4285, 2007 U.S. Dist. LEXIS 93202, at *14 (D. Or. Dec. 17, 2007) ("In light of the conflicting testimony on the cause of the fire, the court finds that a jury must determine if the faulty workmanship caused the fire and, if so, whether the faulty workmanship

---

[14]  A "volunteer" in such circumstance "is a stranger or intermeddler who has no interest to protect and is under no legal or moral obligation to pay under the circumstances." *Mass. Bonding & Ins. Co. v. Car & General Ins. Corp.*, 152 F. Supp. 477, 482-83 (E.D. Pa. 1957).

11

or the resulting fire was the predominant cause of [the] loss."). Moreover, it appears that Allstate acted in good faith in reimbursing Adeseun and therefore did not surrender its right to subrogation. *See Great N. Ins. Co. v. Greenwich Ins. Co.*, No. 05-635, 2008 U.S. Dist. LEXIS 39567, at *24-25 (W.D. Pa. May 12, 2008) (holding that insurers do not sacrifice their right of subrogation by making prompt, but erroneous, payment because of a good faith belief that a payment is owed, and finding that because the insurer's reasons for making payments was not entirely clear, resolution of the volunteer issue had to wait for trial). Accordingly, PPL's Motion for Summary Judgment based on its assertion that Allstate was a volunteer is denied.

### D. Plaintiffs may present evidence regarding the relocation of the meter at trial.

PPL's argument that Plaintiffs cannot attempt to hold PPL liable based on its failure to relocate the meter is rejected. Unlike the cases PPL cites prohibiting a party from raising a new claim in an attempt to overcome summary judgment, Plaintiffs are not raising a new claim.[15] Rather, they assert an alternative theory of liability on the negligence claim that is supported by the allegations in the Complaint,[16] which need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a). The cases PPL cites are also distinguishable because PPL was aware of this alternative theory prior to the filing of dispositive motions and had an opportunity to conduct discovery regarding the relocation of the meter. *See, e.g.* Berdanier Dep. 19:9-21:24; Adeseun Dep. 50:7-55:16, 71:10-72:4, 99:23-101:6. Plaintiffs may therefore present this theory of liability to the jury. *Accord Laurie v. AMTRAK*, 105 F. App'x 387, 392 (3d Cir. 2004) (refusing to allow the plaintiffs to assert a new theory of

---

[15] This Court also notes that this theory of liability is not the reason summary judgment is being denied.

[16] *See* Compl. ¶ 19 (alleging that PPL was negligent in "failing to adequately instruct and supervise its employees, representatives, technician's and/or agents so as to avoid the problems set forth in subparagraph (a) above" and in "failing to provide, establish, and/or follow proper and adequate control so as to avoid the problems enumerated in subparagraph (a) above").

liability for the first time in their third supplemental response to a summary judgment motion because it was too late, essentially an attempt to amend the complaint, and would necessitate additional discovery).

### E. Adeseun's Motion for Summary Judgment is denied.

Because the breach of contract claim is being dismissed, Adeseun's summary judgment request based on his argument that only PPL can be liable for breach of contract is moot. His challenge to the negligence claim, which is grounded on the gist of the action doctrine, is denied for the reasons previously set forth herein.

## V. CONCLUSION

If PPL had actual or constructive knowledge of a dangerous condition impacting Adeseun's electrical system, it had a duty to take reasonable measures to avert harm, and such determinations are in the province of a jury. The nature of this duty is well-recognized and does not arise out of contract. Whether PPL breached its duty by failing to relocate the meter is an alternative theory of liability that may be presented to the jury. Finally, Allstate is entitled to seek subrogation because there are disputed issues of fact as to the predominate cause of the fire and Allstate acted in good faith when it payed Adeseun for his loss. Consequently, Adeseun's Motion for Summary Judgment, as well as PPL's Motion for Summary Judgment on the negligence claim, are denied. In light of Plaintiffs' consent to voluntarily dismiss its Breach of Contract claim, however, Count II is dismissed.

A separate Order will be issued.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge